IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DARIUS STRICKLAND,

        Plaintiff,

    v.

RESIDENCE INN BY MARRIOTT, LLC;
RESIDENCE INN PORTLAND
DOWNTOWN/PEARL DISTRICT;
ANDREA PIRRET,

        Defendants.

No. 3:21-cv-00270-HZ

OPINION & ORDER

Timothy R. Volpert
Tim Volpert PC
2111 NE Hancock Street Suite 2B
Portland, OR 97212

Noah Horst
610 SW Alder Street Suite 415
Portland, Oregon 97205

    Attorneys for Plaintiff

Shane P. Swilley

Amber A. Beyer
900 SW Fifth Avenue, 24th Floor
Portland, Oregon 97204

    Attorneys for Defendant

1 – OPINION & ORDER

HERNÁNDEZ, District Judge:

Plaintiff Darius Strickland brings this action for racial discrimination in a place of public accommodation under the Oregon Public Accommodations Act ("OPAA"). Before the Court is a Motion to Dismiss for Failure to State a Claim filed by Defendants Residence Inn By Marriott, LLC and Residence Inn By Marriott Portland Downtown/Pearl District.[1] For the reasons outlined below, the motion is denied.

## BACKGROUND.

Plaintiff's Complaint alleges the following facts:

Plaintiff is a 31-year-old African American man who resides in Portland, Oregon. Not. Remov. Ex. 1 ("Compl.") ¶ 2, ECF 1-1. Plaintiff booked a room at the hotel of Defendant Residence Inn Portland Downtown/Pearl District ("the Inn") for the night of June 1, 2020, planning to participate in and create a documentary film about racial justice protests that were occurring in the area. *Id.* ¶ 4.

Around 6:45 p.m. the evening of his reservation, Plaintiff knocked on the locked door of the Inn. *Id.* ¶ 4. He was met by Defendant Andrea Pirret, a white employee of the Inn, who looked out and told Plaintiff that the Inn was no longer taking reservations for that night. *Id.* Plaintiff informed Defendant Pirret that he already had a reservation, and Defendant Pirret let him enter. *Id.* Plaintiff alleges Defendant Pirret "seemed agitated and annoyed for having had to unlock the door" to let him in. *Id.* ¶ 7. At the front desk, Plaintiff presented Defendant Pirret with an "Explore Authorization Form" that his sister, who was an employee at another Portland Marriott location, had given him so that he could receive discounts at Marriott hotels. *Id.* ¶ 6. Defendant Pirret told Plaintiff that the Inn would have to keep the original form, and Plaintiff

---

[1] Remaining Defendant Andrea Pirret has filed an answer. ECF 9.

responded that when Plaintiff had used the form at other Marriott locations the hotel clerk had taken a copy of the form and returned the original to him. *Id.* ¶ 7. Defendant Pirret told Plaintiff she would make a copy of the form, and then she "walked back and forth between the counter and the back room without engaging [P]laintiff" for "several minutes." *Id.*

In front of other guests, Defendant Pirret then accused Plaintiff of presenting her with a forged authorization form and stated she would call Marriott corporate. *Id.* Plaintiff was "insulted and shocked" at the accusation. *Id.* ¶ 8. Plaintiff tried to explain that his sister was not distributing copies of the authorization form, rather that other hotel clerks had previously returned the original form to him after he used it. *Id.* Plaintiff told Defendant Pirret she could keep the original form and that he simply wanted his room key. *Id.* ¶ 9. Defendant Pirret again accused Plaintiff's sister of forging paperwork and repeated that she would call Marriott corporate, adding that Plaintiff's sister would "lose her job." *Id.*

Defendant Pirret then instructed Plaintiff to slide his debit card to pay for the room. *Id.* ¶ 10. Plaintiff inserted the chip end into the machine, and Defendant Pirret said in a rude manner: "I told you to slide it not to put the chip in." *Id.* After Plaintiff had paid and asked for his key, Defendant Pirret held up the "Explore Authorization Form" in front of Plaintiff's face, pointed to it, and said: "[i]f you were educated and knew how to read you would see it says you have to surrender the paper," which Plaintiff had already agreed to do. *Id.* Plaintiff asked to speak to Defendant Pirret's boss, and Defendant Pirret responded that she was the manager. *Id.* ¶ 11. Plaintiff asked for contact information for Marriott corporate, which information Defendant Pirret repeatedly denied she had, despite having threatened earlier to contact the corporate office. *Id.* ¶ 11, 14.

Plaintiff's friend Eva Vega then entered the hotel and Plaintiff recounted the exchange to her. *Id.* ¶ 12. Vega told Defendant Pirret that Plaintiff was in fact highly educated and that she owed him an apology for her treatment of Plaintiff. *Id.* A man claiming to be the hotel manager then emerged from the back room and was informed of the exchange. *Id.* ¶ 13. The man said that since he is Asian American, and since he trained Defendant Pirret, he knew she was not racist. *Id.* Plaintiff pointed out he had not accused Defendant Pirret of racism, merely that he wanted to report her demeaning comments. *Id.* Both the man and Defendant Pirret resisted several of Plaintiff's requests for their own names and for the contact information of Marriott corporate. *Id.* ¶ 14. Defendant Pirret and the man who said he was a manager ultimately provided their own business cards after Vega informed them that "[P]laintiff works with the media and was filming a documentary about the protest and that [Plaintiff and Vega] intended to contact the media about this incident." *Id.* The employees did not provide contact information for Marriott corporate. *Id.*

Plaintiff's claim for relief alleges that at least part of the motivation for the above-described conduct by Marriott employees was Plaintiff's race, and the interaction caused "feelings of racial stigmatization, humiliation, embarrassment, pain, suffering, and anger." *Id.* ¶¶ 18, 20.

## STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When evaluating the sufficiency of a complaint's factual allegations, the court must accept all material facts alleged in the complaint as true and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). A motion to dismiss under

Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of his "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Id.* (citations and footnote omitted).

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, a complaint must state a plausible claim for relief and contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct[.]" *Id.* at 679.

## DISCUSSION

Defendants argue that the Court should dismiss Plaintiff's complaint because it fails to allege intentional discrimination.

**I.     The Oregon Public Accommodations Act ("OPAA")**

"Although Oregon courts have not articulated what elements a plaintiff must plead to state a claim under [the Oregon Public Accommodations Act ("OPAA")], the text of the statute provides guidance." *Roberts v. Legacy Meridian Park Hosp., Inc.*, No. 3:13-CV-01136-SI, 2014 WL 294549, at *7 (D. Or. Jan. 24, 2014). A cause of action is available to "[a]ny individual against whom any distinction, discrimination or restriction on account of race [or] color . . . has been made by any place of public accommodation" or by any employee acting on behalf of the

same. Or. Rev. Stat. § 659A.885(8). "The OPAA proscribes not just a refusal to serve a person on account of that person's race, but also 'the greater evil of unequal treatment, which is the injury to an individual's sense of self-worth and personal integrity.'" *Harrington v. Airbnb, Inc.*, 348 F. Supp. 3d 1085, 1089 (D. Or. 2018) (quoting *King v. Greyhound Lines, Inc.*, 61 Or. App. 197, 203 (1982)). At the motion to dismiss stage, a plaintiff need only allege a prima facie case of discrimination. *Id.* To do so, a plaintiff must allege that that they were treated "unequally because of [their] race and that [they have] been injured as a result." *Id.* at 1089–90; *Craig v. US Bancorp*, No. CIV. 03-1680-AA, 2004 WL 817149, at *4 (D. Or. Apr. 14, 2004). Courts require plaintiffs suing under this provision to allege intentional discrimination, not merely discriminatory effect. *Harrington*, 348 F. Supp. 3d at 1089; *Menchu v. Legacy Health*, No. 3:12-CV-02075-ST, 2014 WL 2855042, at *5 (D. Or. June 23, 2014), *aff'd,* 669 F. App'x 361 (9th Cir. 2016).

## II. Plaintiff's Allegation of Intentional Discrimination

Defendants argue Plaintiff's claim fails because he neither alleges that he was subjected to racial epithets or that he was treated differently than other customers of a different race. The Court disagrees.

### A. Racial Stereotypes and Discriminatory Intent

Defendants argue that Plaintiff's Complaint alleges no facts that amount to direct evidence of intentional discrimination—namely racial abuse, epithets, and slurs—and that any inference that "defendants had a discriminatory intent towards him because of his race (or for any other reason)" is "mere speculation." Def.'s Mot. Dism. 6, ECF 8.

While an allegation of direct evidence of a racially discriminatory motive, including the use of slurs, may be sufficient state a claim for intentional discrimination, it is not required if

there are sufficient factual allegations constituting circumstantial evidence to lead to a reasonable inference of discriminatory motive. *Harrington*, 348 F. Supp. 3d at 1089 (citing *Lindsey v. SLT Los Angeles, LLC*, 447 F.3d 1138, 1140–41 (9th Cir. 2006)); *Craig*, 2004 WL 817149, at *4 ("[T]he issue here is not whether racial invective was used . . . but whether [the plaintiff] was treated differently because of his race and whether that treatment resulted in [the plaintiff] suffering any harm."). Even at summary judgment, "Plaintiff is not required to present direct evidence of . . . discrimination, only sufficient evidence to give rise to an inference of unlawful discrimination." *See Montgomery v. J.R. Simplot Co.*, 916 F. Supp. 1033, 1038 (D. Or. 1994), *aff'd*, 76 F.3d 387 (9th Cir. 1996) (citing *Henderson v. Jantzen, Inc.*, 79 Or. App. 654, 657 (1986)) (stating as much regarding sex discrimination claims arising under Oregon law).

It is not implausible, as Defendants argue, that a factfinder could infer intentional discrimination from Defendants' employees' alleged treatment of Plaintiff. Although Defendant Pirret did not call Plaintiff a racial slur, her remarks to Plaintiff accusing him and his sister of committing a crime (forgery) and characterizing him as uneducated and illiterate constitute circumstantial evidence from which a factfinder could reasonably infer a discriminatory motive based in invidious racial stereotypes about African Americans. *See Lindahl v. Air France*, 930 F.2d 1434, 1439 (9th Cir. 1991) (finding that an employer's comments about candidates "reflect[ed] male/female stereotypes" and could be evidence of discriminatory motive under Title VII); *Kelly v. Bank Midwest, N.A.*, 177 F. Supp. 2d 1190, 1192 (D. Kan. 2001) (finding in public accommodation discrimination case brought under 42 U.S.C. § 1981 that bank employees subjected the African American plaintiff to discriminatory treatment "based on an assumption that [the plaintiff and his brother], as African Americans, were more likely than not attempting to defraud the bank."). Coupled with Plaintiff's allegations of humiliation and racial stigmatization,

the facts alleged in Plaintiff's Complaint state a claim of intentional racial discrimination under the OPAA.

B.  Lack of Comparators and Markedly Hostile Treatment

Defendants also argue that Plaintiff's claim fails because he does not allege that he was treated differently than other, non-African American customers of the Inn. But this omission is not "fatal," as Defendants assert. Def.'s Reply 1, ECF 35. Ninth Circuit standards for alleging intentional discrimination in a place of public accommodation under 42 U.S.C. § 1981 are instructive here, as Oregon courts generally apply federal statutory discrimination standards when analyzing claims arising under the state's anti-discrimination laws. *See Montgomery*, 916 F. Supp. at 1038 (stating in state sex discrimination case that "[t]he Oregon courts have generally adopted federal law with regard to federal statutory discrimination claims and have applied it to actions filed under O.R.S. Chapter 659.").

The Ninth Circuit has cited with approval the Sixth Circuit's holding that a customer in a place of public accommodation can make a prima facie case of intentional discrimination under § 1981 by demonstrating that the customer "received services in a markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory" as an alternative to an allegation of differential treatment to similarly situated customers of another race. *Lindsey*, 447 F.3d at 1145 (internal quotation marks omitted) (quoting *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 872 (6th Cir.), *opinion supplemented on denial of reh'g*, 266 F.3d 407 (6th Cir. 2001)). The court found the Sixth Circuit's reasoning "compelling," in part because comparators often are unavailable to plaintiffs in the public accommodations context, while they are readily available in employment discrimination cases. *Id.* ("The Sixth Circuit distinguishes the commercial services context from the employment context, where records are kept and there is a

paper trail disclosing what treatment is given to similarly-situated others.") (citing *Christian*, 252 F.3d at 870–71).

A reasonable factfinder could conclude that Defendant Pirret's offensive remarks about Plaintiff's levels of literacy and intelligence were "markedly hostile." As a result, Plaintiff has plausibly alleged a racially discriminatory motive sufficient to state a claim under Or. Rev. Stat. § 659A.885.

## CONCLUSION

For these reasons, Defendants' Motion to Dismiss for Failure to State a Claim [8] is DENIED.

IT IS SO ORDERED.

DATED:     July 12, 2021     .


_____
MARCO A. HERNÁNDEZ
United States District Judge